24-6072. Council for Appellants, if you would begin. We're ready to hear you. Good afternoon. May it please the court. Robert Gianchetti of Covington & Burling on behalf of Appellants. I'll reserve five minutes for rebuttal. This appeal presents a simple procedural question. Whether the student plaintiffs have stated a plausible claim for relief to withstand defendant's motion to dismiss. The student's complaint and this court's precedence demonstrate that the students have adequately pled that Oklahoma Senate Bill 615 violates the Equal Protection Clause and Title IX. The district court's order dismissing the student's Equal Protection Title IX claims on the pleadings with prejudice should be reversed. And the student should be afforded the opportunity to prove their claims on their merit. I'll focus first on the student's claim under the Equal Protection Clause before turning to the student's Title IX claim. At the outset, it bears mention that the issue before this court today is not whether Oklahoma can maintain school restrooms separated by sex. Those restrooms existed before and after SB 615. The issue presented by this lawsuit is how SB 615 categorically assigns Oklahoma students to those bathrooms. So, counsel, you don't you don't bathroom separated by sex as a method as a categorical matter. You don't think raises equal protection concerns? Your Honor, I would submit that separation of bathrooms itself, it would be sex classification. But here the argument the issue would be how that applies to our students. OK. All right. I'm misunderstanding. This was a question I was going to ask you. Opposing counsel repeatedly said that you don't contest that for equal protection purposes, there is not a concern by having and having bathroom separate bathrooms for men and women. Is that right or wrong? Correct. In and of itself, that separation, we're not challenging here. We're challenging how the statute categorically assigns who can use those sex separated restrooms. OK. Got it. All right. Then please proceed. In relevant part, SB 615 requires every multiple occupancy school restroom to be designated for the exclusive use of the male or female sex with sex here being defined to mean, and I quote, the physical condition of being male or female based on genetics and physiology as identified on the individual's original birth certificate. As to the student's claim under the equal protection clause, the students adequately allege that SB 615 both triggers and fails heightened scrutiny by classifying based on sex and transgender status. As this court observed just earlier this year in Griffith versus El Paso County, though SB 615 might ultimately survive heightened scrutiny, that issue simply is not before the court today. In light of Scrimeti, what is the status of Griffith? I mean, where is it as precedent in light of that decision? I think Griffith remains binding and valid case law. Scrimeti, as we argue in our supplemental briefing before the court, the law at issue there drew classifications based on medical use and age. It was not a facial sex classification as we submit as the case here with SB 615. So ultimately, Griffith can stand notwithstanding the Supreme Court's decision in Scrimeti. Well, first, as it relates to Scrimeti, if Scrimeti was not a classification based on gender status, how in the world can this be when Scrimeti talked about gender dysphoria and other issues that are not on the face of this statute in any way or form? How in the world is this a transgender classification on this SB 615? Sure, Your Honor. The court in Scrimeti recognized that the tenancy law at issue there, which restricted availability of certain kinds of gender-affirming care for minors, drew lines based on medical use and, by extension, age, not sex or transgender status. Scrimeti says nothing about the constitutionality of other laws that do draw lines based on sex or transgender status, which we submit SB 615 does here. Here, a person who is assigned male at birth can use the boys' restroom in schools, but a person assigned female at birth cannot. Keeping everything constant, a person's sex assigned at birth is a but-for cause of whether they can use a particular restroom. That's why the district court here and every court of appeals that have confronted a similar restroom law has found that laws of this nature constitute facial sex classifications and warrant heightened scrutiny. Well, the mere use of sex, as Scrimeti tells us, sex in gender language does not implicate the Equal Protection Clause. In fact, there is a reference to the fact that it's a question of whether you're treating men and women differently, and that is not what we have here, right? All biologically sexed men, per the regulation, SB 615, can use a male restroom. All biologically oriented women can use a female restroom. And so how, in light of that sort of understanding of what sex means under the Equal Protection Clause, is this a sex-based classification? Your Honor, I begin first. As this court noted in Falloran and Griffith, the meaning of sex on a motion to dismiss posture, the court must accept allegations as to sex. Gender identity is true for purposes of a motion to dismiss. We're at this threshold cleaning stage, and Your Honor's argument, I believe… Oh, I'm not sure that's true at all. If you're saying that sex as you define it should be the operative principle as opposed to sex as it's defined in the statute, then no, I don't accept that premise. I mean, sex is, you know, this statute offers a definition of sex. It is biologically oriented. Why should that definition not be the operative one, not the one that appears in your brief and the one that appears in your complaint, which talks about the notion of gender identity being a central component of sex. That's fine, but that's not what's before us in SB 615, is it? Your Honor, even if you were to view sex narrowly as nothing more than a person's assigned sex or what the state defendants refer to as the concept of biologic sex, which I'll note also in Scrimetti was a term that was used but not defined by the court. That's still the reason why the students here are being treated differently and why defendants denied the students access to the restrooms consistent with their sex. So I'd submit that this statute, like the other restroom laws ever before the 4th, the 7th, the 9th, the 11th Circuit classifies based on sex and thus triggers heightened scrutiny. And how does it deny them equal rights based upon biological sex? Biologically sex men use the male restroom. Biologically sex women use the female restroom. I mean, girls and boys, sorry, in this context. So if I understood you correctly, even if we use the narrower definition, you still found some point of disparity and discrimination. So I just am trying to understand that. Sure. Your Honor, I think even if the rule or the statute here were to apply equally to biologic men and biologic boys, equal application of a rule doesn't make it neutral from an equal protection context. That would be akin to saying that a rule that no one can wear yarmulkes is neutral or a law that no one can marry a person of the same sex or of a different race is neutral. Here, if a transgender boy had been identified as male at birth rather than female, he could use the boy's restroom at school. He's therefore being treated worse than those identified male at birth and is being discriminated in the process on the basis of sex. I believe we've alleged enough at this stage, consistent with Griffith and Rocky Mountain and the reasoning of Fowler, to survive another day and be able to prove in discovery the merit of our claims. Why isn't he being treated differently because of his gender identity as opposed to sex? I mean, as I understood your brief in particular, what it was drawing is the distinction, and I think you just articulated it, in which you had two different sets of people. A transgender boy who identifies as a boy and a cisgender boy who identifies as a boy, the cisgender boy being biologically male. The difference that determines whether they can use the male bathroom is the question of what's on their birth certificate and what is their biological status. They both identify as male. Is that right? Your Honor, I think the logic and the reasoning of Bostock is instructive here, where the court articulated that it's impossible to discriminate against one for being transgender, which we define as having a gender identity different from your sex assigned at birth. And how does Bostock help us in light of Scrimetti, in light of how Scrimetti seemed to shy away from Bostock, and Bostock is a Title VII case. It's not an equal protection case. Scrimetti made clear that because the statute issue there did not classify based on sex, it wasn't going so far as to opine on whether Bostock applied in the equal protection clause, and it made clear that Bostock remains good law. It simply wasn't visiting that issue that day. So I think the logic and the underpinning of Fowler as to how Bostock's rationale in Title VII can apply equally to the first step of the equal protection analysis, I think remains true, notwithstanding Scrimetti. And didn't Fowler get, I'm sorry, go ahead, Judge McHugh. Does your equal protection argument depend on applying Bostock to the equal protection context? No, Your Honor. I think that this court need not even reach that issue. Sure, the student's arguments are consistent with Bostock's logic, but we would submit heightened scrutiny is triggered here based on straightforward application of the Supreme Court's sex discrimination and equal protection precedents like VMI. It's clear that sex-based classifications trigger heightened scrutiny, notwithstanding Bostock. Well, the problem they have is you've conceded that you don't have any objection to sex-based classifications for purposes of bathrooms, right? And what you're really focusing on is you disagree with the definition of boy and girl, right? Your Honor, I think we disagree with how the statute categorically assigns students into restrooms, notwithstanding the fact that sex-separated restrooms existed before and after the statute. But as the courts in Grimm and the Seventh Circuit and Whitaker noted, it's discriminatory than when the statute categorically assigns who qualifies as a boy or who qualifies as a girl for purposes of separation into those restrooms. And you think that you can prevail to at least have heightened scrutiny without carrying Bostock over to this context? Correct. I think the Supreme Court's precedents in the sex discrimination context, even if the ballot for Bostock didn't exist, we would still be able to trigger heightened scrutiny here. And again, as this court in Rocky Mountain made clear, when we're in a heightened scrutiny world, the defendant simply can't meet their burden to show that the statute is substantially related to important governmental interests. Those are very fact-intensive inquiries that are just not right for resolution on a motion to dismiss posture. You mentioned, I'm sorry, go ahead. No, no, you go ahead. The Yamika case you mentioned, but in Scrimetti, the court doesn't cite that the Yamika is actually a hypothetical in another case, but it does talk about the pregnancy case where the insurance company excluded the coverage of pregnancy, which obviously only women can get pregnant, and seemed to say that that was not an issue with regard to an equal protection violation. I mean, I think Scrimetti has, as I think Judge Holmes has said, has sort of told us that they are not receptive to the argument you're making here. Your Honor, I don't think we can predict what the Supreme Court would or wouldn't do. We can only rely on what Scrimetti says. And in fact, Scrimetti in footnote 3 notes quite clearly that that decision does not speak to a law that regulates based on a class of persons identified on the basis of a specific characteristic. Neither Scrimetti nor Geduldig, which I believe is the decision Your Honor is referring to, deals with a law like that. So we're just outside of a world where the holding of Scrimetti and Geduldig need apply. And in Geduldig in particular, the court's reasoning there was that when you have a statute that doesn't classify based on sex on the face of it at all, the fact that the medical condition like pregnancy might be something that only one sex can experience isn't a basis to necessarily say that's facial sex discrimination. But that doesn't apply here where the statute itself sets forth the facial sex classification that was missing in Geduldig. Yes, but why doesn't Trump versus Orr reorient the analysis we should be making? And that is that if there's a designation of biological sex based on historical fact, that doesn't, they said that does not offend equal protection and is subject to rational basis analysis. It seems that you need to tell me why that approach is not applicable here. Your Honor, the Orr decision was in an emergency posture on an undeveloped record. The court made clear that there its view was the government was merely attesting to a historical fact on passports without subjecting anyone to differential treatment. Here, the students are alleged to suffer differential treatment because of their sex assigned at birth. There's no historical fact attestation like in the passport context. So I'd submit that Orr was an emergency posture staying a preliminary injunction. It doesn't bear on whether the students here have stated a claim. So it's proved their claims at a later date. Well, let me understand. Are you saying that what they said doesn't matter because this was on an emergency docket on a preliminary injunction and what they said doesn't apply? I wouldn't say it doesn't matter. I just would want to make sure we're giving it the proper. It's not presidential binding precedent here. I don't think we can interpret that to mean that the students here have failed to state a claim. Again, the statute here basically classifies based on sex, unlike the passport policy there. Is there something in the rules or a case or something that says an emergency order like this that is published and has articulation beyond granted or denied is not presidential? Your Honor, I believe there's case law that preliminary ruling such as saying a preliminary injunction aren't a full dispositive presidential decision. And even if it were, I submit that it doesn't require dismissal of the students' claims here with prejudice. Again, there's no historical fact being attested to when one uses a restroom in this context. So it just seems it doesn't seem akin to the passport issue present in Orr. Well, you said that they're not being discriminated against by transgender status in the Trump versus Orr case. But that's exactly what the argument was, right? That only people that would have a problem with checking the box for their sex at birth would be people who have transitioned on a passport. I believe that was one of the arguments that was made, Your Honor. And I believe the court, again, in a very two-paragraph decision, had brief language to the effect of its view that the government merely attesting to a historical fact on passport didn't draw sex-based lines. I think that's different from the situation presented by this particular statute, as we've alleged. I'm sorry. No, go ahead. But the historical fact that there have been men and women bathrooms, which you've accepted, leads to the question of the conception of what sex-based classifications are under the Equal Protection Clause. And not only do you have language in the majority decision in Scarametti that suggests it involves disparate treatment as it relates to boys and girls, men and women. And I want to get your reaction to this. This is a language from Justice Alito's decision. He says, a party claiming that a law violates the Equal Protection Clause because it classifies on the basis of sex cannot prevail simply by showing that the law draws a distinction on the basis of gender identity. Rather, such a plaintiff must show that the challenge law differentiates between two biological sexes, male and female. And there's, granted, not with the same level of detail, but there's mirroring language in the majority decision in Scarametti as it relates to what it means to discriminate on sex for purposes of the Equal Protection Clause. And so how does that – we don't have that here. I mean, there's no differential treatment of men and women in this case. Again, Your Honor, I would return to my arguments about the equal application of a law to biologic men. Biologic sex does not mean it's neutral from an equal protection context. I think that's fully consistent with the majority's decision in Scarametti. It even pointed out that the issue in Loving v. Virginia, for example, where one couldn't marry someone from a different sex that's different from the law that was presented in Scarametti. I think that there's a facial sex classification here, as every single appellate court that's considered a similar law has found, and it can remain true, notwithstanding Scarametti. Well, let's play this out a little bit. I mean the district court, of course, adopted the view that there was a sex-based classification here and then found that it nevertheless survived intermediate scrutiny. Throughout your brief is a suggestion that somehow or other we could not do that in the context of a 12b-6, and it's not clear to me why that is. I mean your brief – I mean your complaint itself articulates what Oklahoma has said are its justifications for this, as in security and privacy. Well, why do I need evidence, or why does anybody need evidence to know, in particular the privacy justification, whether that is an important governmental interest and whether this is substantially related to serving that? Your Honor, I don't think we dispute that privacy and safety are important governmental interests, but the issue is determining whether this statute actually substantially furthers those interests. And what I'm saying is why do we need evidence for that? And in particular, I could see maybe an argument about safety, but privacy? I mean what is it that would be substantially unrelated about privacy when it's talking about the notion of people who are not biologically of the same sex entering the restroom of another? Your Honor, I think the courts in Grimm and in Whitaker, when they had evidence before them, found that those privacy concerns were not actually justified on those records. And I think the students here are prepared and ready to make a similar submission to the district court if we have that opportunity. But looking just at the face of the complaint, which is what this court is tasked with, I don't think you're able to determine as a matter of fact or law that this statute actually substantially furthers those interests. Our allegations are to the contrary. They must be accepted as true at this juncture. That's not to say that this statute may not one day survive heightened scrutiny. The allegation that it does not further privacy is something we have to accept as true? We argue and allege that those justifications are pretext as applied here. That's a legal conclusion, is it not? That's not a statement of fact. We also allege that factually privacy and safety are not furthered by statutes of this nature and that there are no germane privacy or safety concerns with a transgender student using a restroom consistent with their identity. So these are very fact-intensive issues that need to be resolved at a later date. Let me follow up and get your view on one thing. Throughout the briefs, your briefs, there's been a reference to multiple-use restrooms. And as if that was the entire scope of what's at issue here. I mean, as I understand, that's not what we're talking about. We're also talking about locker rooms. We're also talking about showers. And isn't that a distinction with a difference if you're talking about the notion of whether one can say that privacy might be in play? I mean, the definition of multiple occupancy restrooms in changing areas, which is in the statute, SB 615, includes locker rooms and showers. And so aren't those on the table, too, in terms of deciding how to evaluate this? Thank you. I think we're bringing it as applied challenges to our three students particularly. So focusing on that for a moment, the allegations in our complaint show that the students are using restrooms, not these other facilities. And then even facially, the thrust of our complaint is as to the application of restrooms in this context. But again, the defendants here didn't move to dismiss on the extent of SB 615's applications. The court didn't rule on that. If this court has concerns with that, I think the appropriate solution would be to remand and let the students consider whether an amendment might be appropriate. But to dismiss the claims in their entirety with prejudice doesn't seem appropriate on the current posture. I thought the district court did have some language about not calvening the scope of this argument in your claim. Did it not? I believe, Your Honor, that might have been in connection with the preliminary injunction, which you may recall the court's order focused primarily on a preliminary injunction, which is not on appeal, and then briefly on the motion to dismiss aspects. I believe Your Honor is referring to a footnote that focused primarily on the preliminary injunction, which, as the Ninth Circuit recently found, it reversed the preliminary injunction on these facial as applied issues as Your Honor is articulating. But whether we state a claim in the first instance, I think we've passed that low bar. Okay. Let's hear from the other side, and then we'll see where we are in terms of rebuttal time. Thank you. Thank you, Your Honor. Please proceed. Gary Gaskins for the State Defendants. I plan to use 10 of the allotted 20 minutes. The district court correctly dismissed plaintiff's claims challenging Senate Bill 615 as implausible. We ask this court to affirm. This case has been fundamentally transformed by the Supreme Court's decision earlier this year in the United States v. Scrimeti. There, the court held that Tennessee's law restricting certain medical procedures for transgender minors was subject only to rational basis review and did not violate the Equal Protection Clause. Critically, the court used the term biological sex nearly 20 times and explicitly defined transgender as meaning someone whose gender identity does not align with their biological sex. Following Scrimeti, the Supreme Court vacated this court's decision in Fowler v. Stitt, a case plaintiffs had cited extensively and remanded for reconsideration in light of Scrimeti. Most significantly, Scrimeti's concurring justices explicitly stated that access to restrooms represents an area of legitimate regulatory policy where legislatures have wide latitude and heightened scrutiny is inappropriate. Under the Supreme Court's own standard, the court's GVR in Fowler indicates a reasonable probability that this court would reach a different conclusion. And the Supreme Court's recent opinion accompanying its order in Trump v. Orr on November 6 related to displaying sex at birth on passports should eliminate any remaining doubt as to whether Fowler must be vacated. Turning to the merits, plaintiffs face insurmountable obstacles on both their Title IX and Equal Protection claims. On Title IX, the regulations implementing it explicitly permit schools to maintain, quote, separate toilet, locker room, and shower facilities on the basis of sex. Remarkably, plaintiffs themselves have admitted again today that they do not object to restrooms separated by sex in schools. This admission is fatal to their claim. If sex separation is constitutionally permissible, which plaintiffs concede, then how can Oklahoma's implementation of that permissible policy violate Title IX? The answer is it cannot. Moreover, when Title IX was enacted in 1972, sex had a clear meaning referring to biological sex, the anatomical and physiological differences between male and female. And Congress knows how to protect gender identity explicitly when it chooses to, as shown in the Violence Against Women Act, which lists both sex and gender identity as distinct protected categories. Mr. Gaskins, I didn't understand in the appellant's brief. I understood them to say that you could view sex as having a component of gender identity, in fact, that that is a significant component of sex. And therefore, there is, as I understood it, that the only difference as they see it is that you have two people who believe, you know, using male restrooms, two people who have the same identity of being male. And the only thing that stops one from using the restroom is that they don't biologically qualify as a male. But the important point for the purposes of this question is the fact that the transgendered male is, in their view, male because of the essential component of identity in sex. Yeah, I would say at least we're still talking about Title IX. No, we're talking about equal protection. Well, on equal protection, the U.S. Supreme Court in Scrimeti had no issue understanding what biological sex was. I think, you know, from the questions just a few minutes ago, I think Scrimeti made it pretty clear that you have to show that there's conduct that is prohibited from one sex that is permitted for another, for that to be any sort of equal protection violation. You answered the question. Go ahead. In Scrimeti, they said the statute didn't classify on the basis of sex at all, right? Well, I think what Scrimeti said is we must focus on what the text actually says. And they said it's medical procedure and age. Well, I mean, I think at first the court said we've never suggested that mere reference to sex is sufficient to trigger heightened scrutiny. And then in concluding the rational basis applied, the court said Tennessee law, quote, does not prohibit conduct for one sex that it permits for the other. And Scrimeti also said you can't circumvent the equal protection clause by writing in abstract terms, right? Right. But I think with the court and the analysis, they looked at whether changing the person's sex alters how the law applies to them. In Tennessee, the answer was no. A biological male minor couldn't receive puberty blockers for gender dysphoria. A biological female minor could not receive puberty blockers for gender dysphoria. Changing their sex wouldn't change the result. Therefore, the law didn't classify on sex. Applying the test here yields the same result. Does changing a student's sex alter how Senate Bill 615 applies? No. A biological male must use male facilities. A biological female must use female facilities. If we somehow change the student's biological sex, they'd use the facility corresponding to their biological sex. The law applies based on objective biological criteria, not on identity status or subjective characteristics. Therefore, rational basis applies. I think also Justice Barrett's concurring opinion, I think, is very helpful on this point, where she telegraphed in her concurring opinion with Justice Thomas that rational basis would apply in this very case. She said, quote, in some contexts present legitimate reasons for sex-based distinctions. Access to restrooms is one such area. Legislatures have many valid reasons to make policy in these areas. And as long as the statute is a rational means of pursuing a legitimate end, the Equal Protection Clause is justified. And Justice Alito, in his own concurring opinion, said a law classifies based on sex for equal protection purposes only when it lays down one rule for males and one rule for females. Again, males and females are treated exactly the same as it relates to Oklahoma's Senate Bill 615. I'd also point out that a biological male seeking access to female facilities is not similarly situated to a biological female using those same facilities. This is because the privacy interests at stake for protection from exposure to the opposite sex and states of undress operates differently for each. Similarly situated inquiry must focus on what matters for the specific context. Here, we're talking about facilities where children disrobe and perform bodily functions. Go ahead, Judge McHugh. I'll concede. You go ahead. What I want to spend a little time, though, on is the argument that if we were to accept the premise that this is a sex-based classification, we were looking at intermediate scrutiny, that this would not be an appropriate case to go out on a 12b-6. The notion that Oklahoma has articulated privacy and safety as its reasons, and that those were things that cannot be, as a matter of law, determined based upon the pleadings. Let me hear your best argument for why that is not true. I assume your argument would be it's not true. What authority would you look to in making that statement? I'll first turn to what the district court said. The district court said determining what is and is not an important governmental objective is a legal question. The district court went on to say that protecting students' safety and privacy interests in school restrooms and changing areas is undoubtedly closely related to the statute's mandate that all multiple occupancy restrooms or changing areas be for the exclusive use of either male or female sex. You can use the word undoubtedly all you want, but that doesn't answer the question. That's a conclusory statement. I'm asking how do you know that important interest is substantially related? What SB 615 is? I would go back to another decision rendered by the Supreme Court this last term, free speech coalition v. Paxton, which counsels against the need for remand. There the court was able to resolve intermediate scrutiny without an extensive factual development because the constitutional issues were clear and the government interests are evident from the statute's face and historical practice. You have to have allegations that support that connection between the interest and the means, right? So with respect to privacy, I think maybe you can look historically that what for 200 years we've been separating men and women, but it seems a little thin to me on safety. Do we just presume that there's a safety issue? I mean, the complaint suggests the safety issue goes the other way. If you force transgender students to use the bathroom of their sex at birth, they're more likely to be subject to being beaten up. And I would go back and Paxton, the court said that these requirements, they're talking about having that age verification for buying explicit magazines have been made by generations of legislators and by the American people as a whole. And if they command our respect, a decision to decision contrary to long and unchallenged practice should be approached with great caution, no less with explicit overruling of precedent. So the court was essentially saying that when a regulatory approach has deep historical roots and right widespread acceptance, the court can rule that it serves important interests through appropriate means as a matter of law. And I think the legal practice itself provides the justification. I see that I've got past my 10 minutes. I do want to make sure that I reserve time for the school defendants. All right. Good afternoon, your honors. May it please the court. My name is Adam Haven. I'm here on behalf of the school defendants to address the plaintiff's equal protection claim, as well as any questions this court may have with regard to its ability to affirm on alternative grounds. I intend to reserve some time for my colleague, Mr. Clyburn, to address the title nine issue, as well as any issues the court may have with regard to the charter school. And Mr. Haven, I was somewhat surprised in your brief that you refer to affidavits and in conjunction with making your argument and suggesting that somehow or other that was OK, because they were in the motion for preliminary injunction. What basis is it on a 12B6, which is what we're on now, would you have for referring to affidavits and evidence that came up in the context of a preliminary injunction? Your honor, we fully acknowledge that the court is tasked with looking at the four corners of the complaint here and to the extent the affidavits were cited, we would put forward that the affidavits, rather than contradicting the truthfulness of the allegations in the complaint, actually proved the truthfulness of the allegations in the complaint. Well, that was plaintiff's job. That was not your job to put them in to support the complaint. I mean, do you accept the premise that, and I know there's some side motions about this matter, do you accept the premise that that's not on the table for us now? Your honor, we do absolutely accept the premise that the four corners of the complaint are what control.  Your honors, I'm here today to put forward a simple proposition that the school districts cannot be held liable merely because they implemented a mandatory state law. This court in 2000 recognized this principle and the decision of Weitzel where it held that a local government entity could not be held liable merely because it implemented a state adopted policy. Also, the briefing has pointed the court to two pertinent Second Circuit opinions. In particular, the Jusimas decision that the Second Circuit released in 2022 addresses the exact issue before this court, which is whether or not a local government entity can be held liable under Monell simply for adopting a mandatory state law. There, the Second Circuit adopted a two-step inquiry. The first step of that inquiry is whether or not the local government entity had any meaningful choice as to whether it would implement the state's law. And the second inquiry is if so, did they adopt a discrete policy that evidences a conscious choice made by that local government entity to implement the policy. Neither of those inquiries are satisfied here. The plaintiff's own complaint acknowledges that the statute was mandatory. There is nothing discretionary about this statute. Doesn't SB 615 make it pretty clear that the schools can decide whether or not to promulgate policies consistent with the state statute? They can choose not to do it. They are subject to penalties, but they have the autonomy to decide whether they do or they don't follow it. Your Honor, I would say that that's not true. And the reason for that is each of our school defendants is governed by a board of education and each individual board member takes an oath to uphold Oklahoma law and to not violate that law. And so regardless of whether or not there's a financial penalty or private causes of action or possible adverse accreditation action, all of which are true here, and only as the plaintiffs admit in their complaint, further the coerciveness of this statute. But regardless, the school defendants posit that there is no meaningful choice when it comes down to a violation of state law or not. Well, if the state law expressly gives you a basis to essentially conscientiously object, then how is it such that I think what I understand you to be saying is you have these school board members who've sworn to uphold the Oklahoma law, the Oklahoma Constitution, there's this Oklahoma law, so I feel bound to follow it. Well, if embedded in the Oklahoma law is a way that you can walk away by paying a penalty, why doesn't Oklahoma law contemplate that some people will do exactly that? Your Honor, I don't think that is a meaningful choice as contemplated by the Second Circuit case law, and it certainly wouldn't pass this court's decision in Weitzel. There, the statute, or I'm sorry, the policy, the state-adopted policy at issue was the state judiciary had adopted a TRO form for issuance of TROs for individuals that have committed domestic abuse violations, and this court remanded to the district court with the specific instruction and emphasis that the county could not be held liable merely for a state-adopted policy. Here, there is absolutely no discretion. It goes well beyond the facts at issue in Weitzel. This statute repeatedly, over and over again, clarifies that it's mandatory, that there is no discretion. Your Honor, I hope that answers your question. If you'll have any further questions for me, I'm happy to answer, but I want to make sure my colleague Justin has time as well. That's fine. Thank you. May it please the court, I'm Justin Clyburn, on behalf of Defendants Oklahoma City Public Schools and Harding Independent Charter District. Under Title IX, there is no vicarious liability, and that is exactly what the complaint alleges for Oklahoma City Public Schools, whose only act alleged in the complaint is approving the charter school application of HICD. There's no vicarious liability under Oklahoma's Charter School Act, and the complaint does not allege that any plaintiff attended Oklahoma City Public Schools. This case is distinct from the circuit court cases holding similar policies violate Title IX in three important regards. First, the school defendants here are not challenging the court's interpretation of sex or sex discrimination. Second, this is the first case in which the state legislature and state board of education mandated bathroom policy such as this. And third, this is the only case on appeal addressing whether a bathroom policy adopted under threat of reduced funding exposes the school district to Title IX. Answer, restate the first one again. What was your first statement? Unlike in the other circuit court cases, the school defendants are not challenging the court's interpretation of sex or sex discrimination under Title IX. Okay, and what court are you referring to? Just generally courts, or what court are you talking about? I'm referring to Grimm, well, any court, but what I'm referring to is that in Grimm in the Fourth Circuit, Dodds in the Sixth, and Whitaker in the Seventh, the school districts actually argued that the policy did not discriminate based on sex, and that is not what the defendants here are doing. But you're just not taking a position on it, right? You're not saying that you're not, do you join the position of plaintiffs regarding that issue? We take no position on the issue. I just wanted to make clear that we are not arguing that this is or is not sex discrimination. All right. If we were to find that HICD violated Title IX, then the Oklahoma Public Schools would have given significant assistance to them by funding, right? Well, Your Honor, the school, let me say, the Oklahoma City Public Schools has not funded HICD. The State Board of Education calculates the state aid to HICD separately from Oklahoma City. It then sends that money to Oklahoma City with the nondiscretionary mandate that it disperses it to HICD. As well, the State Board of Education, under state law, is responsible for ensuring that HICD complies with federal law. Does Oklahoma Public Schools provide property to be used by the charter school? They lease property to the charter school, but it would be a landlord-tenant relationship. Well, you just have to have, you know, do they provide any financial assistance? They do not, Your Honor. All right. Any more questions from the panel? Okay. As I indicated, Appellant, we'll give you in total two minutes, and you don't have to use it all, but you have it. I think it bears emphasis that of my three friends on the other side, only one offered any defense of SB 615 today on the merits. The school defendants, as you know, go out of their way to disclaim any defense. I find that notable. In response to my colleague from the state defendants, the role of heightened scrutiny is not to make sex a prescribed classification. It's just to shift the burden to the state to show their work and show that, in fact, this is a law that substantially advances an important governmental interest. In fact, this court in Free the Nipple said, more, not less, judicial scrutiny is required when asserted physical differences between men and women are raised to justify sex discrimination. So, again, I submit we've alleged a sex classification triggering heightened scrutiny. These are fact issues that simply can't be resolved on the face of this complaint. Briefly on Title IX, which I didn't have a chance to address in my opening remarks, and it was addressed in counsel's argument, while we do not challenge the maintenance of restrooms separated by sex, the simple fact that the Title IX regulations or the generic Title IX provision allowing for sex-separated facilities exist, that doesn't change the analysis. Those provisions can't override the statutory prohibition against discrimination on the basis of sex under Title IX. They're simply broad statements that sex-separated facilities are not unlawful in and of themselves, not that schools can act in an arbitrary or discriminatory manner when dividing students into those facilities. Well, do you disagree that... No, go ahead and point us to something. What do you want to point us to? Thank you, Your Honor. I would point, Your Honor, to the court's decision, the Fourth Circuit's decision in Grimm and in the Seventh Circuit's decision in Whittaker and in Martinsville, where these same issues were teed up and resolved in favor of the students there. I'll note on preliminary injunction that the court's decision in Whittaker... Go ahead, Judge McHugh. Are all those cases before Scrimmetti? They're before Scrimmetti, but again, Your Honor, I don't believe Scrimmetti touches on Title IX and as to the equal protection arguments as we discuss in our briefing today. It certainly is relevant to the analysis, but we explain it doesn't prove dispositive, again, for determining whether we've stated a claim here. Very briefly, if I might be heard, as to the school defendant's arguments, the district court's bases for dismissal touched on this argument of whether they were simply following orders. So I'd submit that issue is waived for purposes of this appeal. In any event, even if the court were to engage with that argument on the merits, this court's decision in the Barber decision shows that when there's a conflict between a federal law and state law, I'll be blight... Simply following orders is not a defense. Nothing stopped these school defendants from suing the state like we did if they were concerned that they violated SB 615. They implemented their own policies. They are not passive or ministerial actors here. All right. Thank you for your very fine arguments. If the panel doesn't have any more questions, case is submitted, and the court will be in recess.